UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOUGLAS C. LONG, et. al.,

        Plaintiffs,

v.                                        CASE No. 8:06-CV-2384-T-27TGW

SPORTS44.COM, INC., et. al.,

        Defendants.

_____

REPORT AND RECOMMENDATION

This is an action in which the plaintiffs assert claims arising from investments in an internet sports company and one plaintiff's investment in a security company. A defendant, J. Brett Smith, has filed a motion to dismiss, contending that the court lacks personal jurisdiction over him and that the venue here is improper or, alternatively, that the case should be transferred to the Eastern District of Michigan. The defendant's motion, however, overlooks the federal securities statutes that are the basis for some of the plaintiffs' claims. Those statutes support personal jurisdiction and venue in this district. Moreover, the defendant has not set forth persuasive reasons for

a transfer.  Accordingly, I recommend that the defendant's motion to dismiss or, alternatively, to transfer be denied.

I.

The plaintiffs in this case are Douglas C. Long, Curtis D. Long and Kevin Rogers.[1]  Douglas Long and Curtis Long are residents of Florida, and Kevin Rogers is a resident of Pennsylvania.  Defendant J. Brett Smith is a resident of Michigan (Smith Aff., Doc. 8, ¶3).  Defendant Sports44.com, Inc., a defunct sports internet business venture, had an office located in Michigan (Doc. 7, pp. 3, 6-7; Smith Aff., Doc. 8, ¶8).  Defendant Sharkwater Capital, LLC, a security company, has its principal place of business in Michigan (Doc. 1, ¶10).

The plaintiffs each invested in Sports44.com, Inc., a proposed internet sports website, and Curtis Long invested in Sharkwater Capital.  In 1999, Smith approached Curtis Long about investing in an internet-based sports business venture named Sports44.com, which was to be a website that provided various services to sports fans, including a market for sports products, and a venue for sports fans and athletes to communicate (id. at ¶11;

---

[1]Curtis Long and Douglas Long are brothers (Curtis Long Aff., Doc. 11-2, ¶2).

Curtis Long Aff., Doc. 11-2, ¶5).[2]   Smith gave Curtis Long a copy of Sports44.com's Confidential Private Placement Memorandum (Doc. 1, ¶11). Curtis Long had discussions only with Smith concerning his investments and did not discuss the investments with anyone else affiliated with either defendant company (Curtis Long Aff., Doc. 11-2, ¶7).  Generally, Curtis Long's communications with Smith occurred via telephone (id. at ¶8).

According to the Confidential Private Placement Memorandum, Sports44.com was offering for sale up to four million shares of common stock with a minimum purchase price of ten dollars per share (Doc. 7-2, p. 2).[3]  The

---

[2]Specifically, Sports44.com was to be "a website at which users could purchase sporting goods, sports memorabilia, tickets to sporting events, dietary supplements, health-club memberships, and sports-related books and magazines; reserve times with participating sports facilities, find local activity partners, view sports scores, statistics and articles, track team performance, participate in fantasy sports leagues, learn about sports medicine, compete with other users in sports video games, chat with professional and college athletes, chat with other users; and provide on-line auction capabilities to its users for the buying and selling of used sports equipment, sports memorabilia and other sports-related products" (Doc. 1, ¶11).

[3]The Confidential Private Placement Memorandum indicated that the shares were not registered with the Securities and Exchange Commission and were being offered under an exemption from the Securities Act of 1933 (Doc. 7-2, pp. 2, 8).

The Confidential Private Placement Memorandum also repeatedly warned potential investors that an investment in Sports44.com was high risk with the possibility of no return on an investment and loss of an investment (see, e.g., id. at pp. 2, 4, 7, 10).  A Subscription Agreement provided similar warnings (see, e.g., Doc. 7-3, ¶2(g), (i), (l), (n)).

founders of Sports44.com were attempting to raise forty million dollars for the business venture (id.).[4]

In November 1999, Smith contacted Curtis Long and informed him that Sports44.com was selling shares of common stock for two dollars per share to Sports44.com's friends and family members (Doc. 1, ¶13). From November 1999 through August 2000, Curtis and Douglas Long sent numerous checks to Smith totaling $204,000 for the purchase of shares in Sports44.com (id. at ¶¶ 16, 21, 32, 33, 38, 39).[5] Further, from 1999 through 2004, Rogers sent Smith $44,000 in order to purchase shares of stock in Sports44.com (id. at ¶22). However, despite repeated requests by the plaintiffs, Smith never provided stock certificates to the plaintiffs (id. at ¶42).

In February 2000, Smith invited the Longs to attend the Dan Marino Celebrity Invitational golf tournament at Weston Hills Country Club in Weston, Florida (id. at ¶23). During the tournament, Smith discussed with

---

[4]The founders of the company were J. Brett Smith, Richard D. Stromback, Jeffrey D. Adelman and A. Michael Palizzi (Doc. 7-2, p. 5).

[5]Generally, per defendant Smith's instructions, the checks were written payable to defendant Smith's promotional company, USA International (Doc. 1, ¶15; see Doc. 1-2, Ex. A; Doc. 1-3, Ex. B; Doc. 1-4, Ex. C; Doc. 1-5, Ex. D; Doc. 1-6, Ex. E; Doc. 1-7, Ex. F; Doc. 1-8; Ex. G).  One check was written payable to Sports44.com (Doc. 1-2, Ex. A).

the Longs their investment in Sports44.com (Curtis Long Aff., Doc. 11-2, ¶8; see also Doc. 1, ¶¶ 23-27).  Furthermore, at the tournament, Smith introduced the Longs to sports celebrities.

Over the next several months, Smith told the plaintiffs of a prospective sale of Sports44.com to various purchasers (id. at ¶28).  The sale of Sports44.com never took place (id. at ¶29).  Smith offered the plaintiffs numerous explanations as to why a sale did not materialize.

On July 15, 2002, Sports44.com was dissolved, but Smith never informed the plaintiffs of its dissolution (id. at ¶49).  Despite the dissolution of Sports44.com, Smith continued to represent to the plaintiffs that it was an active corporation and that its sale was imminent (id. at ¶50).

In addition, in October 2001, Smith approached Curtis Long about an investment in defendant Sharkwater Capital, a security company (id. at ¶60; Curtis Long Aff., Doc. 11-2, ¶6).  Sharkwater Capital provided security for various entities, including sports arenas, the Department of Homeland Security, airports and large companies  (Doc. 1, ¶60).  Smith advised Curtis Long that an investment in the company would reap a guaranteed return of seven to one on the invested money (id. at ¶61).  Long

thereafter sent two checks totaling $19,300 to Smith to invest in the company (id. at ¶¶ 62, 63; Doc. 1-9, Ex. H; Doc. 1-10, Ex. I).  Subsequently, Smith represented to Curtis Long that the company was having problems similar to the sale of Sports44.com (Doc. 1, ¶65).  Curtis Long never received a return on his investment (id. at ¶64).

On December 27, 2006, the plaintiffs filed a complaint against the defendants, asserting various claims, including violations of the Securities Act of 1933, the Securities Exchange Act of 1934, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and common law fraud (Doc. 1).  Subsequently, Smith filed a motion to dismiss on the grounds that this court lacks personal jurisdiction over him and that venue is improper in the Middle District of Florida (Doc. 7).  Alternatively, Smith seeks to transfer the case to the Eastern District of Michigan (id.).  The plaintiffs filed a response to the motion (Doc. 11).  The motion was then referred to me for a report and recommendation (Doc. 14).  A hearing was subsequently held on the matter (Doc. 20).

II.

The defendant argues that this case should be dismissed pursuant to F.R.Civ.P. 12(b)(2) for lack of personal jurisdiction  (Doc. 7, pp. 7-10). This argument is predicated upon the principle that Florida's long-arm statute must allow a district court to exercise jurisdiction over the defendant, and that the exercise of jurisdiction must be proper under the Due Process Clause of the Fourteenth Amendment (id. at p. 7).   The plaintiffs respond that this argument is irrelevant because it overlooks the plaintiffs' claims based upon the Securities Act of 1933 and the Securities Exchange Act of 1934, which make the Florida long-arm statute and the Fourteenth Amendment inapplicable (Doc. 11, p. 2).  At the hearing, the defendant conceded that the legal basis for his motion was erroneous.  Nevertheless, he contended that it would be unfair to try this case in this district.

In light of the defendant's failure to articulate a non-frivolous argument regarding lack of personal jurisdiction, that contention can be summarily rejected.  The defendant's claim of unfairness could have been developed based upon the Fifth Amendment and the Eleventh Circuit's decision in Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935 (11th Cir. 1997).  However, the defendant did not mention the Fifth

Amendment, the <u>Republic of Panama</u> decision, or any other pertinent authority in support of a claim of unfairness.  It is not this court's obligation to develop the defendant's argument for him.  The court should simply reject the erroneous argument that was raised regarding lack of personal jurisdiction.

In all events, a claim of lack of personal jurisdiction due to constitutional unfairness would fail.  The plaintiffs rely upon §22(a) of the Securities Act of 1933 and §27 of the Securities Exchange Act of 1934 as the statutory grounds to establish personal jurisdiction.  Section 22(a) of the Securities Act of 1933, 15 U.S.C. 77v(a),  states:

> The districts courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, except as provided in section 77p of this title with respect to covered class actions, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter.  Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. 78aa, provides:

> The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

These statutory provisions authorizing nationwide service of process establish a statutory basis under the federal securities laws for personal jurisdiction over the defendant. See U.S. S.E.C. v. Carrillo, 115 F.3d 1540 (11th Cir. 1997).

Furthermore, the nationwide service of process authorized by the securities' laws has important ramifications on the constitutional aspect of the issue of personal jurisdiction. In the first place, it means that any constitutional constraints on the exercise of personal jurisdiction arise from

the Due Process Clause of the Fifth Amendment, rather than the Fourteenth Amendment, which is the more familiar limitation that is implicated in diversity cases.  Republic of Panama v. BCCI Holdings (Luxembourg) S.A., supra, 119 F.3d at 942.  In addition, under the nationwide service of process provision, the established requirement that a defendant have "minimum contacts" with the forum demands only that a defendant have minimum contacts with the United States as a whole.  Id. at 946-47; U.S. S.E.C. v. Carrillo, supra, 115 F.3d 1543-44.  The defendant unquestionably meets this test.

That, however, is not the end of the inquiry.  In Republic of Panama, the Eleventh Circuit stated, "[t]here are circumstances, although rare, in which a defendant may have sufficient contacts with the United States as a whole but still will be unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum."  119 F.3d at 947.  The court emphasized, however, "that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern."  Id.  In this respect, the court pointed out that modern means of communication and transportation have lessened the burden of defending a lawsuit in a distant forum.  Id. at 947-48.

Consequently, "[t]he burden is on the defendant to demonstrate that the assertion of jurisdiction in the forum will 'make litigation "so gravely difficult and inconvenient" that [he] unfairly is at a "severe disadvantage" in comparison to his opponent'." Id. at 948 (*quoting* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985)).

The Eleventh Circuit then set forth a further step in the analysis (id.):

> When a defendant makes a showing of constitutionally significant inconvenience, jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant. In evaluating the federal interest, courts should examine the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy. Where, as here, Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives.

Under these principles, the exercise of jurisdiction over the defendant is not unconstitutional. Thus, the defendant has clearly failed to

carry his burden of showing that this is one of those rare cases in which the inconvenience to the defendant of litigating in this forum would be so great that the defendant would unfairly be at a "severe disadvantage" as compared to the plaintiffs.

Although the defendant has filed an affidavit in support of his motion, that affidavit merely focused on the defendant's lack of contacts with Florida.  Consequently, that affidavit, which would be much more meaningful if the issue concerned "minimum contacts" under the Fourteenth Amendment, provides no basis for concluding that the defendant, if forced to litigate here, would experience the high degree of inconvenience that must be demonstrated under Republic of Panama to establish a Fifth Amendment violation.  While it can be inferred that there would be some inconvenience to the defendant from proceeding in this district, rather than in the defendant's home area of Michigan, that inconvenience falls far short of the unfair inconvenience the Eleventh Circuit requires in order to have a constitutional violation.

The defendant, therefore, has failed to carry his burden of demonstrating constitutionally significant inconvenience.  That, as indicated, is sufficient to end the due process inquiry.

III.

The defendant also argues that, pursuant to F.R.Civ.P. 12(b)(3), the case should be dismissed for improper venue (Doc. 7, pp. 10-11).  In support of his argument, the defendant contends that 28 U.S.C. 1391(b) does not support venue here because, under the statute, venue is based on "where any defendant resides, if all defendants reside in the same [s]tate" or where "a substantial part of the events or omissions giving rise to the claim occurred." The defendant further asserts that, even under RICO's broader venue provision, 18 U.S.C. 1965(a), venue is limited to where he resides or to where he is found (id. at p. 10).

Again, the defendant's arguments miss the mark.  The defendant, in his arguments, completely ignores the broad venue provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934.  Venue is proper here under those provisions.

Section 22 of the Securities Act of 1933, 15 U.S.C. 77v(a), states:

Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the

defendant is an inhabitant or wherever the defendant may be found.

The evidence indicates at this point that the sales of the securities took place in this district and that the defendant participated in those sales. In his affidavit, Curtis Long states that he, as well as his brother Douglas, reside in Pinellas County, Florida (Doc. 11-2, ¶¶ 1, 2). He avers that the communications with the defendant regarding his investments were conducted almost entirely by telephone (an exception being a meeting at Weston, Florida) (id. at ¶8). Thus, the telephone calls resulting in the sales of stock were between Curtis Long in Pinellas County, Florida, and the defendant in Michigan. That contact with this district is sufficient to support venue in this court.

Furthermore, where, as here, claims are asserted under the Securities Act of 1933 and the Securities Exchange Act of 1934, venue is considered under the latter statute, which has the less restrictive venue provision. Hilgeman v. National Ins. Co. of America, 547 F.2d 298, 302 n. 7 (5th Cir. 1977).

Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. 78aa, provides:

-14-

> Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred.   Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

Therefore, a plaintiff may bring suit in "any such district" "wherein any act or transaction constituting the violation occurred." Hilgeman v. National Ins. Co. of America, supra, 547 F.2d at 301.  The defendant "need not be physically present in the forum district nor need he commit more than a single act in the district if that act is important to the consummation of the scheme."  Id. at 302 n.11.  Rather, "any use of ... interstate facilities made within the forum district constituting an important step in the execution of the fraudulent, deceitful scheme or in its consummation is sufficient." Hooper v. Mountain States Securities Corp., 282 F.2d 195, 204-05 (5th Cir. 1960), cert. denied, 365 U.S. 814 (1961).

In this case, the plaintiffs allege that Smith violated Rule 10b-5 by making material omissions and representations with respect to

investments (Doc. 1, ¶¶ 83-88).  And, as indicated, Curtis Long, a resident of Pinellas County, Florida, avers that Smith generally communicated with him about the investments by telephone (Doc. 11-2, ¶8).  These contacts are sufficient to establish venue in this district pursuant to §27 of the Securities Exchange Act of 1934.  Hilgeman v. National Ins. Co. of America, supra, 547 F.2d at 301-02 (North Dakota defendant sending plaintiff annual premium notice in Alabama for ongoing securities scheme was sufficient to establish venue in Alabama); Hooper v. Mountain States Securities Corp., supra, 282 F.2d at 205 (one telephone call was of material importance in scheme to defraud for venue consideration).

IV.

The defendant, alternatively, seeks a transfer of this case to the Eastern District of Michigan pursuant to 28 U.S.C. 1404(a).  That statute provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The moving party has the burden of showing that the balance of interests weighs strongly in favor of

transfer.  <u>The Connecticut Indemnity Company</u> v. <u>Palivoda</u>, 2004 WL 3661069 *5 (M.D. Fla. 2004).  The defendant's conclusory motion has failed to make such a showing.

In assessing a motion under §1404(a), courts should consider such things as convenience of the parties, convenience of witnesses, access to evidence, availability of process to compel the presence of unwilling witnesses, and the interest of justice.  <u>Id</u>.  The plaintiffs' choice of this forum is entitled to some weight, particularly since two of the three plaintiffs live here and acts upon which the claims are based took place here.  <u>See</u> 15 Wright, Miller & Cooper, <u>Federal Practice and Procedure</u>: Jurisdiction 3d §3848.

The defendant tries to overcome those circumstances by asserting that there are three defendants, all of whom are Michigan residents (Doc. 7, p. 12).  But defendant Smith is the only individual (and at least one of the corporate defendants has been dissolved).  In this situation there is certainly no justification for transferring to the Longs the inconvenience of a non-resident forum.

The defendant also asserts that there will be inconvenience to witnesses if this case is tried here. However, the defendant fails to articulate with any specificity what those witnesses would say. The Connecticut Indemnity Company v. Palivoda, supra, 2004 WL 3661069 *6. Moreover, there has been no showing that the testimony of significant witnesses could not be obtained if the case is tried here.

As indicated, the defendant has the burden of demonstrating that a transfer to the Eastern District of Michigan is warranted. The defendant's weak showing is unpersuasive and does not justify a transfer.

V.

For the foregoing reasons, I recommend that Defendant J. Brett Smith's Motion to Dismiss for Lack of Personal Jurisdiction and/or Improper Venue Per Fed.R.Civ.P. 12(b)(2) and (3) (Doc. 7) be denied.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: SEPT. 27, 2007

-18-

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).